**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JANE DOE (K.R.D.),

    Plaintiff

v.

INTERCONTINENTAL HOTELS GROUP PLC,
SIX CONTINENTS HOTELS, INC., HOLIDAY
HOSPITALITY FRANCHISING, LLC, IHG
MANAGEMENT (MARYLAND) LLC, and
NEW DTRS MICHIGAN AVENUE, LLC,

    Defendants.

CIVIL ACTION NO: 1:26-CV-04611
HONORABLE THOMAS M. DURKIN

**BRIEF IN SUPPORT OF DEFENDANT NEW DTRS**
**MICHIGAN AVENUE, LLC'S MOTION TO DISMISS**

i

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................1

SUMMARY OF ALLEGATIONS IN THE COMPLAINT.........................................2

LEGAL STANDARD.................................................................................................3

ARGUMENT ..............................................................................................................3

I.      PLAINTIFF'S PERPETRATOR LIABILITY CLAIM SHOULD BE DISMISSED. ...........3

II.     PLAINTIFF'S PARTICIPANT LIABILITY CLAIM SHOULD BE DISMISSED. .............5

        A.      Plaintiff's "Venture 1" Theory Fails Because Plaintiff Fails to Plausibly Allege
                That DTRS Participated in a Venture with Her Alleged Trafficker. .........................5

                1.      "Participation in a Venture" Requires More Than Merely Providing a
                        Trafficker with Routine, "Off-the-Shelf" Services or Nonfeasance. .................6

                2.      Plaintiff's Allegations That DTRS Provided Routine Hotel Services and
                        Failed to Sufficiently Curtail Trafficking Fail to State a Claim. .......................9

        B.      Plaintiff's "Venture 2" Theory Fails Because "Venture 2" Is Not "a Venture
                Which . . . Has Engaged in an Act in Violation of Section 1591."...........................11

III.    PLAINTIFF'S CLAIMS BASED ON ALLEGED TRAFFICKING ACTS AT THE
        HOTEL THAT OCCURRED BEFORE APRIL 23, 2016, ARE TIME-BARRED.............13

        A.      The Discovery Rule Does Not Apply. ......................................................................13

        B.      Equitable Tolling Does Not Apply. ..........................................................................14

        C.      The Continuing Violation Doctrine Does Not Apply. ..............................................15

CONCLUSION...........................................................................................................15

#540681920_v1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (D. Or. 2020) ........................................................................................12

*A.D. v. Cavalier MergerSub LP*,
No. 2:22-CV-649-JES-NPM, 2023 WL 3073599 (M.D. Fla. Apr. 25, 2023) ........................11

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
No. 4:19-CV-120, 2020 WL 8674205 (E.D. Va. July 22, 2020)............................................10

*A.G. v. Northbrook Indus., Inc.*,
171 F.4th 1257 (11th Cir. 2026) ..............................................................................................8

*Acevedo v. eXp Realty, LLC*,
713 F. Supp. 3d 740 (C.D. Cal. 2024) ......................................................................................4

*B.J. v. G6 Hosp., LLC*,
No. 22-CV-03765, 2023 WL 3569979 (N.D. Cal. May 19, 2023)..........................................10

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*,
522 U.S. 192 (1997)................................................................................................................14

*Boyce v. SSP Am. MDW, LLC*,
No. 19 C 2157, 2019 WL 3554153 (N.D. Ill. July 31, 2019) .................................................12

*C.C. v. Rashid*,
No. 2:23-CV-02056-GMN, 2025 WL 1785273 (D. Nev. June 26, 2025)...............................14

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 446 (7th Cir. 1990) ..................................................................................................14

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ...............................................................................................7, 8

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024)................................................................................................7, 8

*Doe (C.M.G.) v. Six Continents Hotels Inc.*,
No. CV 24-11219-MWF-AJRX, 2025 WL 2020003 (C.D. Cal. June 26, 2025) ....................15

*Doe (C.T.K.) v. Choice Hotels Int'l, Inc.*,
No. 25-C-1274, 2026 WL 84449 (E.D. Wis. Jan. 12, 2026) ...............................................3, 4

#540681920_v1

*Doe (K.H.) v. R-Roof VI LLC*,
   No. 23-CV-11422, 2025 WL 97620 (E.D. Mich. Jan. 14, 2025) ...............................................1

*Doe (S.B.C.) v. Six Continents Hotels, Inc.*,
   800 F. Supp. 3d 1139 (W.D. Wash. 2025)........................................................................10, 12

*Doe (S.M.A.) v. Salesforce, Inc.*,
   No. 3:23-CV-0915-B, 2024 WL 1337370 (N.D. Tex. Mar. 28, 2024)....................................7

*Doe v. Wyndham Hotels & Resorts*,
   No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831 (E.D. Cal. Jan. 7, 2025) ...........................4

*Emily T. v. SBY Downers Grove*,
   No. 25 C 3303, 2026 WL 1265381 (N.D. Ill. May 8, 2026) ...................................................13

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ....................................................................................... *passim*

*Gibbs v. Abt Elecs., Inc.*,
   No. 21 C 6277, 2022 WL 1641952 (N.D. Ill. May 24, 2022) .................................................13

*Johnson Controls, Inc. v. Exide Corp.*,
   129 F. Supp. 2d 1137 (N.D. Ill. 2001) .................................................................................14

*K. H. v. Riti, Inc.*,
   No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024) .......................................................8

*Levin v. Sarah Lawrence Coll.*,
   747 F. Supp. 3d 645 (S.D.N.Y. 2024)....................................................................................4

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ...............................................................................................3

*Menominee Indian Tribe of Wis. v. United States*,
   577 U.S. 250 (2016)..............................................................................................................14

*Mouloki v. Epee*,
   262 F. Supp. 3d 684 (N.D. Ill. 2017) ..............................................................................4, 5

*Mueller v. Deutsche Bank Aktiengesellschaft*,
   777 F. Supp. 3d 329 (S.D.N.Y. 2025)....................................................................................9

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)..............................................................................................................15

*Rotkiske v. Klemm*,
   589 U.S. 8 (2019)..................................................................................................................14

iv

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
  No. 1:23-CV-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024) ....................................11

*United States v. McClellan*,
  794 F.3d 743 (7th Cir. 2015) ...............................................................................................5

*United States v. Spencer*,
  No. 21-CR-253-PP, 2024 WL 152609 (E.D. Wis. Jan. 14, 2024).............................................4

*Zalesiak v. UnumProvident Corp.*,
  No. 06 C 4433, 2007 WL 4365345 (N.D. Ill. Dec. 12, 2007) ...........................................14, 15

**Statutes**

18 U.S.C. § 1591............................................................................................................... *passim*

18 U.S.C. § 1595............................................................................................................... *passim*

18 U.S.C. § 1595(a) .................................................................................................................1, 12

#540681920_v1

**INTRODUCTION**

Plaintiff's Complaint alleging that Defendant New DTRS Michigan Avenue, LLC ("DTRS") violated 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA") should be dismissed. Plaintiff claims DTRS owned and managed a hotel where Plaintiff was allegedly trafficked *on three occasions nearly a decade ago*. Plaintiff alleges that DTRS rented rooms to her alleged trafficker when it knew or should have known he was misusing the rooms to traffic Plaintiff based on conclusory allegations that "red flags" of commercial sex activity were present at the Hotel. These conclusory allegations, which are nearly identical to allegations in *template complaints* filed in *other courts* across the country,[1] fail to state a claim.

Plaintiff does not come close to stating a "perpetrator liability" claim against DTRS because she does not plausibly allege, *as she must*, that DTRS engaged in **criminal sex trafficking**. Indeed, the Complaint is devoid of any facts plausibly alleging that DTRS had *actual knowledge* that Plaintiff was engaging in commercial sex at the Hotel as a result of her trafficker's *force, fraud, or coercion* or that DTRS rented rooms to Plaintiff's unidentified trafficker *for the purpose of obtaining her commercial sex services against her will*.

Plaintiff's "participant liability" claim against DTRS fares no better. Participant liability does not attach unless the defendant "**participat[ed]** in a **venture** which [it] knew or should have known has engaged in a [sex trafficking crime]." 18 U.S.C. § 1595(a) (emphasis added). Under binding Seventh Circuit precedent, a company does not *participate* in a *venture* with a trafficker by merely providing him with its standard, "off-the-shelf" services. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562–63 (7th Cir. 2023). That is all that is alleged here. Plaintiff alleges that, on

---

[1] *See Doe (K.H.) v. R-Roof VI LLC*, No. 23-CV-11422, 2025 WL 97620, at \*6 & n.4 (E.D. Mich. Jan. 14, 2025) (noting that the "red flags" of trafficking allegedly occurring at the subject hotel "also appear in other complaints, involving other trafficking victims from across the country, nearly verbatim").

three occasions, DTRS rented rooms to Plaintiff's unidentified trafficker—the same standard transactions a hotel engages in with nearly *all* of its customers. This is insufficient to state a claim.

Recognizing this deficiency, Plaintiff alleges an alternative theory that DTRS's purported hotel-operating venture with the other Defendants satisfies the statutory requirements. But that theory fails as a matter of law because the venture at issue must be one "which . . . has engaged in an act in violation of Section 1591," and Plaintiff fails to plausibly allege that any of the purported participants in the hotel-operating business engaged in sex trafficking. *See G.G.*, 76 F.4th at 553.

Finally, Plaintiff's perpetrator and participant liability claims based on alleged trafficking occurring before April 23, 2016, are barred by § 1595(c)'s ten-year statute of limitations.

For these reasons, Plaintiff's Complaint fails to state a claim and should be dismissed.

### SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that an unidentified trafficker forced her to engage in commercial sex acts at an InterContinental-branded hotel located in Chicago (the "Hotel"), on three occasions "[f]rom March through April of 2016." *See* Compl. ¶ 70. Plaintiff alleges that DTRS was the "InterContinental Franchisee" that operated the Hotel "through its management agreement with IHG," *id.* ¶ 2.[2] Beyond that, the Complaint only provides conclusory allegations that DTRS rented rooms at the Hotel to Plaintiff's unidentified trafficker and provided him with routine hotel services when it knew or should have known that the alleged trafficker was engaged in trafficking due to conclusory allegations that boilerplate "red flags" of commercial sex activity were present. *See id.* ¶¶ 72, 81. These allegations fail to state a claim.

---

[2] For clarification, Defendants IHG Management (Maryland) LLC ("IHGM") and Six Continents Hotels, Inc. ("SCH") (IHGM and SCH, collectively, the "IHG Defendants") are two of the companies that operate as IHG® Hotels & Resorts ("IHG"). Contrary to the allegations in the Complaint, DTRS does not operate or manage the Hotel and is not a franchisee of any IHG entity. Instead, the Hotel is managed by IHGM pursuant to a Hotel Management Agreement with DTRS. However, for purposes of this motion to dismiss only, the Court assumes the truth of the non-conclusory allegations in the Complaint.

2

**LEGAL STANDARD**

To avoid dismissal, the "complaint must contain allegations that 'state a claim to relief that is plausible on its face.'" *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "the well-pleaded facts in the complaint [are accepted] as true, . . . legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* at 616 (citing *Iqbal*, 556 U.S. at 681). The complaint's non-conclusory allegations must "plausibly suggest[] (not merely [be] consistent with)' an entitlement to relief." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**ARGUMENT**

Plaintiff's perpetrator and participant liability claims are inadequately pled and should be dismissed. In addition, those claims based on alleged trafficking acts that occurred before April 23, 2016, are barred by the statute of limitations and should be dismissed with prejudice.

**I.      PLAINTIFF'S PERPETRATOR LIABILITY CLAIM SHOULD BE DISMISSED.**

Plaintiff does not come close to pleading facts plausibly alleging that DTRS committed a ***sex trafficking crime***, as required to state a perpetrator liability claim. *See Doe (C.T.K.) v. Choice Hotels Int'l, Inc.*, No. 25-C-1274, 2026 WL 84449, at *4 (E.D. Wis. Jan. 12, 2026).

Plaintiff alleges that DTRS violated 18 U.S.C. §1591(a)(1) by "harbor[ing] . . . [Plaintiff] knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts," and violated §1591(a)(2) by "knowingly receiv[ing] [a] financial benefit by knowingly assisting, supporting, or facilitating a venture that trafficked victims including Jane Doe (K.R.D.)." Compl. ¶ 120. Both of these theories require Plaintiff to plausibly allege that DTRS had ***actual knowledge***, or its near equivalent, criminal

3

recklessness,[3] that Plaintiff was being forced, defrauded, or coerced by her trafficker to engage in commercial sex acts. *See C.T.K.*, 2026 WL 84449, at *7; *see also Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 764–65 (C.D. Cal. 2024) ("A 'perpetrator' of sex trafficking can be either a direct violator under §1591(a)(1) or a participant under §1591(a)(2), but *both require actual knowledge of the trafficking* under §1591(e)(4)." (emphasis added)). But Plaintiff merely alleges that conclusory "red flags" of commercial sex were present at the Hotel. *See, e.g.*, Compl. ¶ 72. She does not describe a single communication or interaction between Hotel staff and either Plaintiff or her alleged trafficker which, if true, would demonstrate that Hotel staff **knew** Plaintiff was being forced or coerced by her trafficker to engage in commercial sex acts. Courts have repeatedly found such allegations insufficient to state a perpetrator liability claim. *See, e.g.*, *C.T.K.*, 2026 WL 84449, at *5 ("'[R]ed flags' are warning signs, not actual knowledge."); *Doe v. Wyndham Hotels & Resorts*, No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at *13 (E.D. Cal. Jan. 7, 2025) ("Because a plaintiff must allege actual knowledge rather than constructive knowledge, district courts tend to look beyond allegations of 'red flag' signs that should have put a defendant on notice of sex trafficking, and in particular focus on allegations regarding hotel staff actions or duration and age that are suggestive of actual knowledge of sex trafficking." (collecting cases)).

In addition to actual knowledge, to plead that DTRS sex trafficked Plaintiff by harboring her, Plaintiff must plausibly allege that DTRS "provid[ed] lodging to [her] for the purposes of obtaining her labor or services against her will." *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (emphasis added); *see also Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 680 (S.D.N.Y. 2024) ("harboring" under the TVPRA "refers to 'harboring' for the known purpose

---

[3] Section § 1591 requires at least criminal recklessness, i.e., that the defendant knew of but *consciously* disregarded an unjustifiable risk that force, fraud, or coercion would be used to cause the victim to engage in commercial sex. *See United States v. Spencer*, No. 21-CR-253-PP, 2024 WL 152609, at *6 (E.D. Wis. Jan. 14, 2024) (citing *United States v. Groce*, 891 F.3d 260, 269 (7th Cir. 2018)).

4

of [trafficking]"); *cf. United States v. McClellan*, 794 F.3d 743, 751 (7th Cir. 2015) (conviction for harboring a known alien requires "evidence…that the defendant intended to safeguard that alien from the authorities."). Plaintiff fails to do so because she merely alleges that DTRS provided lodging to Plaintiff in the same manner it does for all of its guests. *See* Compl. ¶ 81. There are no facts plausibly alleging that DTRS provided lodging to Plaintiff "*for the purposes of obtaining her labor or services against her will*[.]" *Mouloki*, 262 F. Supp. 3d at 698 (emphasis added).

Accordingly, Plaintiff's allegations fall far short of stating a "perpetrator" liability claim against DTRS, and that claim must be dismissed.

## II.       PLAINTIFF'S PARTICIPANT LIABILITY CLAIM SHOULD BE DISMISSED.

"Under a theory of participant liability," the plaintiff must plausibly allege that: "(1) a venture has engaged in an act in violation of Section 1591, (2) the defendant knew or should have known that the venture had violated Section 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation." *G.G.*, 76 F.4th at 553.

Plaintiff's participant liability claim should be dismissed because Plaintiff fails to plausibly allege that DTRS participated in a venture engaged in trafficking. *See id.* Plaintiff alleges DTRS participated in a venture with her alleged trafficker by providing him with standard hotel services ("Venture 1"). But a company providing its standard services does not show *participation* in a *venture*. *See G.G.*, 76 F.4th at 553. Plaintiff's alternative theory, that DTRS participated in a hotel-operating venture with the IHG Defendants ("Venture 2"), also fails to state a claim because "Venture 2" is not "a venture [which] has engaged in an act in violation of Section 1591." *See id.*

### A.       Plaintiff's "Venture 1" Theory Fails Because Plaintiff Fails to Plausibly Allege That DTRS Participated in a Venture with Her Alleged Trafficker.

Plaintiff alleges that DTRS *participated* in a *venture* with her trafficker by renting hotel rooms to him on three occasions and failing to intervene in the face of alleged "red flags" of

commercial sex activity. *See* Compl. ¶ 81. Under *G.G.*, these routine services and alleged nonfeasance are insufficient as a matter of law to state a claim. *See G.G.*, 76 F.4th at 560–62.

### 1. "Participation in a Venture" Requires More Than Merely Providing a Trafficker with Routine, "Off-the-Shelf" Services or Nonfeasance.

In *G.G. v. Salesforce.com*, a case with drastically different facts from the present one, the Seventh Circuit addressed the facts needed to adequately allege a § 1595 claim. The court held that the plaintiff stated a claim against Salesforce based on its alleged five-year partnership with sex-trafficking website, Backpage.com. *See id.* at 560. First, as it "[wa]s not in question" that "Backpage committed multiple violations of Section 1591," the court found that "Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business," constituted "'a venture which . . . has engaged in an act in violation' of Section 1591." *See id.* at 553–54. Second, Salesforce knew or should have known that Backpage had engaged in trafficking violations because, by the time the partnership began, "Backpage 'had been publicly identified by law enforcement, [U.S.] Attorneys General, and every state Governor as the biggest and most notorious sex trafficking and pimping website in the United States.'" *Id.* at 549, 555.

Next, the court held that a company participates in a venture under Section 1595 by providing "culpable assistance to a wrongdoer" with "a desire to promote the wrongful venture's success." *Id.* at 559 (citation modified). This can be stated by plausibly alleging that the defendant "provide[d] assistance, support, or facilitation to [a] trafficker through . . . a continuous business relationship," showing "that the participant and trafficker have a tacit agreement." *Id.* (citation modified). However, "'participation' requires more than providing off-the-shelf software (or other common products or services[)]" to a trafficker. *Id.* at 562. "'[M]ere passive nonfeasance' or an 'arm's length, passive, and largely indifferent' relationship with the [trafficker]" is also insufficient. *Id.* at 563–64 (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 500 (2023)). Thus, a

6

company does not participate in a venture with a trafficker by merely providing the same "generic" services or products to the trafficker that it provides to all of its customers or by merely failing to act on information indicating that its customer may be engaged in trafficking. *See id.* at 562–63.

The court found that, as alleged, Salesforce "did not merely sell [Backpage] an off-the-shelf product that enabled Backpage to grow without the input of Salesforce." *Id.* at 562. Rather, "Salesforce and Backpage entered multiple contracts over a number of years whereby Salesforce provided Backpage with software designed specifically for Backpage and affirmative, 'personalized support…'targeted' to Backpage's specific needs." *Id.* at 563. "Salesforce repeatedly consulted with Backpage…and provided 'active, ongoing support'…'tailored' to Backpage's evolving business," *id.*, allowing Backpage to grow exponentially, *id.* at 560. Based on this active partnership, the court "dr[ew] the reasonable inference…that Salesforce participated with Backpage in the venture of Backpage's sex-trafficking business by helping it grow." *Id.* at 564.

While the Eleventh and D.C. Circuits take a different approach to defining "participation in a venture" for purposes of § 1595,[4] there is "no substantive distinction" between the courts' holdings. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024). Both approaches "require that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Id.*[5]

In *Red Roof*, the Eleventh Circuit held that allegations that hotel franchisors repeatedly

---

[4] The Eleventh and D.C. Circuits hold that "participation in a venture" means to "t[ake] part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *Doe 1 v. Apple Inc.*, 96 F.4th 403, 414–15 (D.C. Cir. 2024).
[5] Indeed, the Seventh Circuit stated that, "even if we applied the *Red Roof Inns* definition of 'participation in a venture' to the allegations here, plaintiffs would have plausibly alleged that element. That is, Salesforce 'took part in' the expansion and success of Backpage—'a common undertaking or enterprise involving risk and potential profit.'" *G.G.*, 76 F.4th at 562 (citation omitted) (quoting *Red Roof*, 21 F.4th at 725).

#540681920_v1

rented rooms to alleged sex traffickers when they knew or should have known the rooms were being used to engage in trafficking failed to allege that the franchisors *participated* in a *venture* with the traffickers. *See* 21 F.4th at 725, 726–27.[6] Unlike the active, tailored support Salesforce provided to Backpage, the hotel franchisors only provided the traffickers with their standard services. *See id.* The court concluded that, while "[t]hese allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers[,] . . . they do nothing to show that the franchisors participated in a common undertaking involving risk or profit" with them. *Id.* The court further concluded that the franchisors' alleged failure to intervene despite observing signs of sex trafficking at the hotels did not amount to *participation* in a venture with the traffickers, as "observing something is not the same as participating in it." *Id.* at 727.

Similarly, in *Apple*, the D.C. Circuit held that allegations that tech companies repeatedly purchased cobalt from suppliers they knew or should have known were obtaining the cobalt through forced child labor were insufficient to plead that the companies participated in ventures with their suppliers under § 1595. *See* 96 F.4th 403, 406–07, 414–15 (D.C. Cir. 2024). The court held that "something more" than the alleged "arms-length," buyer-seller relationship between the tech companies and their suppliers is required to state a claim. *See id.* at 415–16. The court distinguished the allegations in *G.G.*, which "show[ed] a 'continuous business relationship' [between Salesforce and Backpage] and 'a desire [by Salesforce] to promote the wrongful venture's success.'" *See id.* at 415–16 (quoting *G.G.*, 76 F.4th at 559–60). In contrast, the tech companies did not provide their suppliers with "direct support, specific business advice, and productivity enhancing [products]" that "facilitat[ed] the growth of a business . . . built upon systematic and widespread [TVPRA] violations.'" *See id.* (quoting *G.G.*, 76 F.4th at 560–61).

---

[6] The Eleventh Circuit has extended *Red Roof* to hotel operators. *See K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024); *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257 (11th Cir. 2026).

**2.** **Plaintiff's Allegations That DTRS Provided Routine Hotel Services and Failed to Sufficiently Curtail Trafficking Fail to State a Claim.**

Under *G.G.* and other well-reasoned cases, Plaintiff's allegations that DTRS provided her trafficker with routine hotel services, such as room rentals, and failed to sufficiently curtail trafficking at the Hotel do not plausibly allege "participation in a venture" with her trafficker.

First, renting rooms to members of the public is a standard transaction that hotels engage in with nearly *all* of their customers. Thus, Plaintiff's allegations that DTRS rented rooms to Plaintiff's unidentified trafficker and provided him with routine hotel services on three occasions merely allege the type of routine, "off-the-shelf" services that the Seventh Circuit stated are insufficient to show *participation* in a *venture* with a trafficker. *See G.G.*, 76 F.4th at 563 ("[R]outine sales of off-the-shelf products or standard services . . . do not . . . amount[] to 'participation.'"). While the Complaint vaguely alleges that DTRS "accommodat[ed] specific requests made by traffickers and their victims," there are no facts alleging what those purported requests or accommodations were other than the allegation that the Hotel provided Plaintiff with extra towels and linens when requested. *See* Compl. ¶¶ 72, 81. This is insufficient as Plaintiff does not *and cannot* allege that the Hotel did not provide extra towels and linens to all guests who requested them. Similarly, Plaintiff alleges that DTRS "allow[ed] johns and traffickers who were not registered hotel guests themselves to freely access the hotel without requiring identification or any other method of tracking." *Id.* ¶ 81.d. But hotels are generally open to the public. Thus, Plaintiff does not *and cannot* allege that DTRS treated Plaintiff, her trafficker, or any alleged johns any differently than it treated all of its guests and invitees. "Without having interacted with [Plaintiff's trafficker] any more or differently than [it] would with [its] many other customers, [DTRS] cannot be said to have 'taken part or shared in an enterprise or undertaking' with [him]." *See Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338 (S.D.N.Y. 2025).

9

Plaintiff's allegations are nothing like the alleged "continuous business relationship" between Salesforce and Backpage that showed "a desire [by Salesforce] to promote [Backpage's] wrongful venture's success." *See G.G.*, 76 F.4th at 559–60. Unlike in *G.G.*, DTRS did not "enter[] multiple contracts over a number of years" with Plaintiff's trafficker, or provide him with "'active, ongoing support' that was 'tailored' to [his] evolving [trafficking] business." *Id.* at 563. Nor are there any allegations that DTRS took part in the growth, expansion, and profitability of the trafficker's business. *See id.* at 560. Instead, Plaintiff only alleges "conduct within the bounds of a traditional hotel-guest relationship," which fails to plausibly allege "participation in a venture." *See Doe (S.B.C.) v. Six Continents Hotels, Inc.*, 800 F. Supp. 3d 1139, 1146 (W.D. Wash. 2025) ("[A]lleg[ing] only conduct within the bounds of a traditional hotel-guest relationship, including renting hotel rooms,…not entering rooms with 'Do Not Disturb' signs, and providing fresh towels and sheets upon request…is insufficient to allege participation in a venture."); *see also B.J. v. G6 Hosp., LLC*, No. 22-CV-03765, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (same).

Second, Plaintiff's allegations that DTRS failed to adequately train staff and implement policies for better detecting and responding to suspected trafficking are also insufficient. DTRS's alleged inaction at most alleges nonfeasance, which is insufficient to show *participation* in a venture. *See G.G.*, 76 F.4th at 563–64 ("[W]e read Section 1595(a)[] . . . to require more than . . . 'mere passive nonfeasance' or an 'arm's length, passive, and largely indifferent' relationship with the criminal." (quoting *Twitter*, 598 U.S. at 500 ("[O]ur legal system generally does not impose liability for mere omissions, inactions, or nonfeasance…[or] impose a generalized duty to rescue."). Indeed, the majority of courts addressing the issue hold that a hotel's "failure to affirmatively prevent or inhibit sex trafficking does not constitute participation [in a venture]." *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-120, 2020 WL 8674205, at *3, *5 (E.D.

10

Va. July 22, 2020); *see also, e.g.*, *A.D. v. Cavalier MergerSub LP*, No. 2:22-CV-649-JES-NPM, 2023 WL 3073599, at *4 (M.D. Fla. Apr. 25, 2023) ("[T]aking ineffective steps to curtail the traffickers . . . hardly sounds like *participating* in a venture."); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 2186173, at *7 (N.D. Ohio May 15, 2024) ("[C]ourts have uniformly held that the [TVPRA] does not impose an affirmative duty to stop trafficking.").

In short, under Seventh Circuit precedent, Plaintiff's "Venture 1" theory fails to state a claim. Plaintiff's participant liability claim should therefore be dismissed.

**B.**  **Plaintiff's "Venture 2" Theory Fails Because "Venture 2" Is Not "a Venture Which . . . Has Engaged in an Act in Violation of Section 1591."**

Plaintiff's "Venture 2" theory, based on the alleged hotel-operating business between DTRS and the IHG Defendants, *see* Compl. ¶¶ 103–06, fails to state a claim because Plaintiff does not plausibly allege that any participant in that alleged venture committed a sex-trafficking crime in violation of § 1591, *see G.G.*, 76 F.4th at 553 ("The first element [of Plaintiff's participant liability claim] is the existence of 'a venture which . . . has engaged in an act in violation' of Section 1591." (quoting 18 U.S.C. § 1595(a)); *see also S.C.*, 2024 WL 2186173, at *4.

Plaintiff alleges "[t]here were TVPRA violations within the scope of [the hotel-operating venture]" because the Hotel "was used [by traffickers] to harbor, maintain, provide, and exploit many trafficking victims, including Jane Doe (K.R.D.) herself." Compl. ¶ 106. This conclusory allegation is insufficient. First, while the Complaint is replete with conclusory allegations that "widespread" trafficking of other undescribed victims by other undescribed traffickers was occurring at the Hotel, *see, e.g.*, *id.* ¶¶ 79, 91, the only trafficking venture Plaintiff *plausibly* alleges has engaged in acts of sex trafficking at the Hotel is Plaintiff's alleged trafficker's venture engaged in trafficking Plaintiff. Indeed, other than that, the Complaint does not allege facts regarding a ***single instance of trafficking at the Hotel***—much less facts which, if true, would demonstrate that

11

there was "widespread" trafficking occurring there. Thus, Plaintiff's allegations of "widespread" trafficking at the Hotel are unsupported conclusory allegations which should be disregarded. *See Boyce v. SSP Am. MDW, LLC*, No. 19 C 2157, 2019 WL 3554153, at *4 (N.D. Ill. July 31, 2019).[7]

Second, because neither Plaintiff's trafficker nor any others was a participant in the purported hotel-operating venture, their alleged trafficking conduct cannot be attributed to that venture. *See* Compl. ¶ 103 (alleging "Venture 2" was between "the IHG Brand Defendants and [DTRS]"). Plaintiff describes Venture 2 as "a commercial venture that resulted from a longstanding business relationship between [DTRS] and the [IHG Defendants] that centered on operation of the [Hotel]." *Id.* ¶ 104. Plaintiff does not *and cannot* allege that her unidentified trafficker took part in the operation of the Hotel. Thus, Plaintiff's trafficker did not participate in "Venture 2," and his criminal conduct cannot be attributed to it.

Plaintiff also alleges "[t]here were TVPRA violations within the scope of [the hotel-operating venture]" because DTRS committed "violations of 18 U.S.C. §1591(a) as a perpetrator." *Id.* ¶ 106. But as shown above in Section I, Plaintiff does not come close to plausibly alleging that DTRS has engaged in **criminal sex trafficking**. There are also no allegations that the IHG Defendants violated § 1591 as perpetrators, *nor could there be*.

Accordingly, because Plaintiff fails to plausibly allege that a participant in the hotel-operating venture engaged in sex trafficking, that venture does not establish the "participation in a venture" element of her participant liability claim. *See* 18 U.S.C. § 1595(a). Plaintiff's "Venture 2" theory therefore fails to state a claim. *See S.B.C.*, 800 F. Supp. 3d at 1147 ("Because Plaintiff

---

[7] The Complaint cites to alleged news articles and online reviews mentioning "sex trafficking, prostitution, and related criminal activity"—**but none of those alleged articles or reviews involve the Hotel at issue in this case**. *See* Compl. ¶¶ 52, 54, 62; *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (finding insufficient allegations "citing publicly available news articles and online reviews which describe[d] sex trafficking occurrences at . . . hotels across the United States," but none "describing sex trafficking at the specific hotel properties at issue in th[e] case").

does not plausibly allege either the Franchisor Defendants or Franchisee Defendant engaged in an act in violation of the TVPRA, it follows that a business venture between only Defendants cannot satisfy the participation in a venture requirement."); *Emily T. v. SBY Downers Grove*, No. 25 C 3303, 2026 WL 1265381, at \*15 (N.D. Ill. May 8, 2026) ("Plaintiffs' allegations 'describe a general-franchisor-franchisee relationship,' rather than a venture engaged in sex trafficking.").

In sum, neither DTRS's alleged routine hotel-guest relationship with Plaintiff's unidentified trafficker nor its alleged hotel-operating relationship with the IHG Defendants plausibly alleges that DTRS participated in a venture for purposes of § 1595. *See G.G.*, 76 F.4th at 553. Plaintiff's participant liability claim against DTRS must therefore be dismissed.

## III. PLAINTIFF'S CLAIMS BASED ON ALLEGED TRAFFICKING ACTS AT THE HOTEL THAT OCCURRED BEFORE APRIL 23, 2016, ARE TIME-BARRED.

Under § 1595(c)'s express ten-year statute of limitations, Plaintiff's claims based on alleged trafficking acts that occurred before April 23, 2016 (ten years before she filed the Complaint on April 23, 2026) are untimely. *See* 18 U.S.C. § 1595(c)(1). Plaintiff alleges she was trafficked at the Hotel on three occasions "[f]rom March through April of 2016," *see* Compl. ¶ 70, so *only eight days* of her alleged trafficking period are within the limitations period. Thus, *on the face of the Complaint*, at least one of the three alleged occasions when Plaintiff was allegedly trafficked at the Hotel occurred prior to April 23, 2016, and is untimely. Plaintiff's claims based on alleged acts of trafficking occurring before April 23, 2016, should therefore be dismissed. *See Gibbs v. Abt Elecs., Inc.*, No. 21 C 6277, 2022 WL 1641952, at \*4 (N.D. Ill. May 24, 2022).

While Plaintiff attempts to avoid dismissal by "invok[ing]" the discovery rule, equitable tolling, and continuing violation doctrine, *see* Compl. ¶¶ 131–38, none of those theories applies.

### A. The Discovery Rule Does Not Apply.

Where a statute of limitations omits a discovery provision, courts may not supply one.

13

*Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019). Thus, a limitations period that runs from "the date on which the cause of action arose," rather than the date of discovery "incorporates the standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (citation modified). Here, § 1595 states that "[n]o action may be maintained . . . unless it is commenced not later than . . . 10 years after the cause of action arose," 18 U.S.C. § 1595(c), not on "*the date of discovery of such violation*," *see Rotkiske*, 589 U.S. at 14. Thus, "the discovery rule does not apply to the TVPRA" and does not save Plaintiff's untimely claims. *See C.C. v. Rashid*, No. 2:23-CV-02056-GMN, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025).

### B.     Equitable Tolling Does Not Apply.

Equitable tolling requires a plaintiff to establish "two elements: (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation modified). The plaintiff "must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990). Thus, equitable tolling only gives the plaintiff "a reasonable time—not a brand-new limitations period—within which to bring [her] lawsuit." *Johnson Controls, Inc. v. Exide Corp.*, 129 F. Supp. 2d 1137, 1146 (N.D. Ill. 2001) (dismissing claim where plaintiff waited seven months after the tolled period to file its complaint). To survive dismissal, "a plaintiff must plead specific facts to support the court's conclusions that she exercised due diligence and that the statute of limitations must be tolled." *Zalesiak v. UnumProvident Corp.*, No. 06 C 4433, 2007 WL 4365345, at *7 (N.D. Ill. Dec. 12, 2007) (dismissing where plaintiff waited three years after gaining knowledge of her claim to file suit).

14

Here, Plaintiff alleges she was "prevented . . . from filing a lawsuit . . . [w]hile under the control of her traffickers through at least May 2016." Compl. ¶¶ 134–35. But even if this is sufficient to allege an extraordinary circumstance, equitable tolling is still unavailable because Plaintiff waited ***nine years and eleven months*** after she left her trafficker's control to file her claim. *See, e.g.*, *Zalesiak*, 2007 WL 4365345, at *7. Plaintiff alleges no factual allegations showing that she acted diligently in pursuing her claims during this period. Plaintiff's unreasonable delay and failure to allege that she acted diligently forecloses application of the equitable tolling doctrine.

### C.      The Continuing Violation Doctrine Does Not Apply.

The continuing violation doctrine is a narrow exception to the statute of limitations where "a single act of harassment may not be actionable on its own," and, instead, becomes actionable "over a series of days or perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The doctrine does not apply to discrete acts that are independently actionable, even if they are all related and part of a larger pattern of serial violations of law. *See id.* at 114.

Here, "[t]he distinction drawn in *Morgan* . . . illustrates why the continuing tort doctrine is not applicable to [Plaintiff's] TVPRA claims." *Doe (C.M.G.) v. Six Continents Hotels Inc.*, No. CV 24-11219-MWF-AJRX, 2025 WL 2020003, at *6 (C.D. Cal. June 26, 2025). Specifically, because "each receipt of a benefit from [participation in] the sex trafficking venture is [an] actionable [discrete act]," the continuing violation doctrine does not apply. *Id.* (quoting *Doe v. G6 Hosp., LLC*, No. 2:24-CV-01235-RSL, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22, 2025)).

Accordingly, because no theory for avoiding the statute of limitations applies, Plaintiff's claims based on alleged acts of trafficking occurring before April 23, 2016, should be dismissed.

### CONCLUSION

For all these reasons, DTRS's motion to dismiss Plaintiff's claims should be granted.

15

Respectfully submitted this 30th day of June, 2026.


                                    **HOLLAND & KNIGHT LLP**


                                    By:   */s/ Chelsea A. McCarthy*
                                    Chelsea A. McCarthy
                                    150 North Riverside Plaza, Suite 2700
                                    Chicago, IL 60606
                                    T: 312-263-3600
                                    chelsea.mccarthy@hklaw.com

                                    John M. Hamrick
                                    Talis Trevino
                                    One Regions Plaza, Suite 1800
                                    1180 West Peachtree Street, N.W.
                                    Atlanta, GA 30309
                                    T: 404-817-8500
                                    john.hamrick@hklaw.com
                                    talis.trevino@hklaw.com

                                    Kathryn Isted
                                    315 South Calhoun Street, Suite 600
                                    Tallahassee, FL 32301
                                    T: 850-224-7000
                                    kathryn.isted@hklaw.com

                                    *Attorneys for Defendants New DTRS*
                                    *Michigan Avenue, LLC, Six Continents*
                                    *Hotels, Inc., and IHG Management*
                                    *(Maryland) LLC*

16